May it please the Court and Counsel, I'm Tom Marra. I'm Counsel for the Appellant, Ms. Judith LaPlante. As you know, we have submitted the following issue on appeal. That issue is whether an Indian plaintiff allegedly injured while working on Indian land by toxic constituents placed on those lands by nonmember defendants may prosecute her claims in tribal court. Since we submit that the tribe has a significant interest in exercising its sovereignty to keep toxic constituents from trespassing on its land and away from its members, the short answer to that question is yes. But has the tribe sought an injunction against Tom Pump? The tribe has not sought an injunction. This is a personal injury case by Ms. LaPlante. It is a personal injury case by Ms. LaPlante. She's been injured by what toxic, just out of curiosity, is this MTBE that's gotten in her water? No, what it is is Ms. LaPlante was the Chief Financial Aid Officer for the Blackfeet Community College and she was the Chief Financial Aid Officer in the early 1990s and the petroleum constituents, massive quantities of it, were eliminated from the town pump site onto the Blackfeet Community College site where Ms. LaPlante was working. And the fact that it's a personal injury case makes it akin to the two cases that we've... What product caused what injury? The petroleum constituents. Was that MTBE or is it gasoline? The makeup of the gasoline and diesel that went onto the tribal land and onto the... Caused her what? Well, she was admitted to the hospital on two occasions where she almost died because her skin failed. She subsequently was diagnosed with... What do you mean her skin failed? Well, the skin, as you know, Your Honor, is your largest organ in your body and when your skin is affected, one of the problems with being exposed to benzene, for example, can cause massive skin irritation and Ms. LaPlante, her skin erupted to such an extent that it actually began to fail and she was admitted two times to the hospital for that failure. The question I have with, you know, recognizing, just assuming that there's a connection, that still remains a personal injury issue as to her. How does that implicate tribal sovereignty, the fact that she was injured and although she is, assuming she's a tribal member? She is a tribal member. She's an enrolled member. But it's exactly the same kind of personal injury, if you will, albeit that the injuries are different than those personal injuries that were found in McDonald v. Means and the Smith v. Salish Kootenai College cases. Those were personal injury cases as well. But the, you know, the difficulty, it seems to me, that this would adopt what I thought the Supreme Court said we can't adopt, which is that I'm a member of the tribe, it hurt me, therefore it really inures to the benefit of the tribe in terms of the problem, sort of come one, come all. It seems to me it's that kind of theory that doesn't really fall under the Montana exceptions. Well, I think it's pretty clear in reading Smith in particular, but it's also stated in McDonald v. Means that Montana doesn't really apply to this case. And it's pretty clear why McDonald doesn't apply to this case, because McDonald specifically says that we never did address in McDonald what would happen if you have a nonmember being sued by a member who was injured on Indian lands. Hence, this Court's decisions in McDonald v. Means and this Court's decisions in the Smith case. They discuss that issue thoroughly and come to the conclusion that we've advocated in this case in order to be consistent with those two cases. This has the same exact factual scenario as McDonald v. Means. Well, I thought the Supreme Court cleared that up in Nevada v. Hicks. I mean, you're now making a distinction, just so I understand it, between Montana being nonmembers on non-Indian fee land, but I thought that Nevada v. Hicks says, well, it applies both to Indian and non-Indian land. So why wouldn't Montana apply at the get-go? Well, it doesn't apply at the get-go, because as the Court in Means and again in Smith, this Court, noted, that's not the test, because those cases don't address those issues. This case is exactly the same case as the McDonald v. Means case, and the reason it's exactly the same case as the McDonald v. Means case is because the only difference between McDonald v. Means is in the Means case, it was a horse that trespassed onto Indian lands and caused the injury, and in this instance, it was the petroleum constituents that trespassed onto Indian lands and caused the injury. And I don't think that there's any distinction between the two. As this Court noted, for example, in Stock West, and emphasized in the first go-around in the Smith case, the tort doesn't happen until the arrow hits its mark. So the mere fact that you allow the horse to go out, that is not the negligent or the tort. When the tort occurs is when the tort object, horse, petroleum constituents, contacts the individual. And under McDonald v. Means, and in particular under the Smith case, when that contact occurs on Indian lands where Ms. LaPlante was working as the Chief Financial Aid Officer for the Blackfeet Community College, that is the key part of that case. And that's why this Court in Smith distinguished both Hicks and Montana and said directly that Montana does not apply to this case. Well, I read the Smith too as basically saying that Montana applies both to events on Indian and non-Indian land. Do you disagree with that reading? Well, I think what it says is that if it happens on Indian land, and all the events that are relevant to this case happened on Indian land, then the nexus requirement, the connection to Indian land is satisfied, and that's been satisfied in this instance. And Montana applies. No, I don't think Montana, again, Montana... So tell me where in Smith too that it says that Montana doesn't apply to that situation. Well, I cited it in the brief. What is it? Yeah, I wanted to hold it because this really, if you read Smith too as having a completely different applicability, then I think we're just reading it differently, so I would appreciate your precision on that point. You want a specific citation to that language? Yeah. Okay. I'm going to cite to the McDonald case, which is the predecessor case to Smith, which was noted and cited in Smith, not reversed in Smith, and it states at page 540, footnote 9, Montana limits its scope to a tribe's civil authority over the conduct of non-members on non-Indian fee land and straight affirms that limitation. Our holding, therefore, fits squarely within Montana, which both Straight and Hicks characterize as the path-marking case. Now, what Smith does is Smith, and the other reason that Smith is relevant is because it talks about another way of addressing the Montana exceptions, if you will. As this Court is aware, the exceptions are if there's a consensual relationship that is created by the conduct of the non-member, and secondarily, if in fact the conduct that is complained of affects the political integrity and economic security, et cetera, of the particular tribe. And in the Smith 2 case, the Court concluded that the consensual relationship was created, if you will, by the fact that the non-member chose to invoke the courts of the tribe, and you have that exact same circumstances in this case, because in this case, this tort not only led to the litigation that we have before us now, but this tort spawned a multitude of other kinds of litigation arising from that tort, and in those other cases, in those other parts of the case, Town Pump and Major Brands, the non-members here, they invoked the jurisdiction of the tribal courts on numerous occasions. But let me just go back, because Smith 2, I thought the distinction was you had a, you invoked the authority of the court against a tribal member in tribal court, and here you have the non-tribal member as the defendant. So that aspect of it is outside of Smith 2. You're saying other cases, right, not this case. Well, no, what I'm saying, I think... No, I'd like to stop. Sure. This case, do you have a non-member plaintiff invoking, in this case, the authority of the tribal court? No, but I don't think that's relevant. Okay. I think, and I think the Smith Court 2 talks about that specifically when what it raises in that case, if you look at Smith 2 carefully, it talks about how that consensual relationship is created, and it can be created in a way akin to what is called minimum contacts, as we all remember from, at least for me, from law school, when they have the International Shoe and the Burger King case. And the Smith, this court in Smith says, what you do is you look to see if there has been sufficient minimum contacts by the non-member with the tribal court in order to generate that consensual relationship. And it doesn't say that it's strictly limited. In fact, it goes out of its way to say it's not strictly limited to the particular case at issue, but you look to it overall. So I think what the Smith case is saying, when you have those minimum contacts and it meets that minimum contact test comparable to International Shoe and Burger King, then you satisfy that consensual relationship test. And I think it's clearly satisfied in this instance, because when you look at the history here, the same tort giving rise to this, Town Pump and Major Brands sued the tribe in tribal court. Town Pump and Major Brands sued their insurance carriers in the tribal court. And the record is replete with Town Pump and Major Brands. Let's say they sued the tribe in federal district court. What would be the result of that? You would have the tribe saying it should have been in tribal court. You probably would have that. But nonetheless. So, I mean, because they sued in the right court doesn't mean that they've somehow consented to their position as a defendant to be in tribal court, does it? Well, I think it's all part of the same thing. No, it's quite a bit different. I mean, where are they supposed to sue the tribe? Well, as part of the litigation, they third-partied the tribe into that litigation. They had been sued themselves by the Blackfeet Community College. And they themselves said, we're exactly where we are supposed to be. So they were the defendant in that case. And they continued to argue, despite the fact that they were the defendant in that case, that the tribal court had jurisdiction. That's why the Smith 2 case court talks about the fact that you can't necessarily look at the status of the party plaintiff versus the defendant to make that analysis. And you need to consider the minimum context side of the equation. Also, if you take the next step and you look at the fact that they sued their insurance companies in tribal court, and if you look at all the pleadings from those various actions that we've ‑‑ there's certainly a lot more that exists than we've presented here. But those pleadings all talk about the fact that they say, yeah, that's exactly where we should be. The only court that should be addressing these issues arising out of this case because of its impact on tribal lands and members is tribal court. And they repeatedly say that in these pleadings. They say that in the pleadings for years. They say that in the pleadings to the tribal court. And they say that in the pleadings to the federal court. They say exactly that. So I think even more so than in Smith, there isn't any question but that consensual relationship is established and those minimum contacts have been met. In fact, they've been overwhelmingly met. Do you want to save a small amount of time for rebuttal? Sure. Thank you. Thank you. May it please the court. Shannon Coffin on behalf of Town Pump and Major Brands, who I'll refer collectively to as Town Pump here, Your Honor. The district court was correct that the Blackfeet tribal courts lacked jurisdiction to adjudicate Judith Applant's personal injury tort claims against non‑Indian Town Pump, stemming from conduct that arose on that company's Town Pump non‑Indian land. Do I understand correctly in this case factually that although the Town Pump location is not on tribal land, it's surrounded entirely by tribal land? Your Honor, I'm not sure if it's surrounded entirely by tribal land, but I have not visited the site, unfortunately, but there certainly is adjacent tribal land around the property. I'm not sure if it's completely around the property. Would that make a difference? No, Your Honor, it doesn't. It doesn't make a difference at all. There are a couple of things about the land, the tribal land at issue here. First of all, I want to point out, as Judge McCune pointed out  There's nothing in the tribal court complaint that seeks relief for injury to the land. The tribal land owner, the community college, is not a party to this suit. The tribe itself is not a party to this suit. The land itself, Your Honor, the land has changed hands a number of times during the relevant time frame in this suit. The complaint alleges conduct starting from 1958 forward. From 1958 through about the mid-'70s, this land wasn't tribal land at all. The land was owned actually by non-members at the time. The claim here is that there were spills after the time the tribe repurchased the land in 1987. That's correct that that's the allegation, but even the reacquisition of that land, to the extent that the status of the land has anything to do with this case, even the reacquisition of that land does not imbue the land with full tribal sovereignty that the tribe once had over that land. If you read Cass County and City of Cheryl, the tax cases that we cited in our brief, those cases say that reacquisition of once alienated tribal lands doesn't reestablish that full sovereignty. So if there's any sovereignty in this land, it's really just the sovereignty of a landowner. And the ability to litigate personal injury towards suits is not something you consider as inherent in the right of ownership of land. So she should have brought her suit in state court? Yes, Your Honor. That's our position. That's correct. Now, if there were diversity, you could bring it in federal court, but the Montana Supreme Court has made clear that tribal plaintiffs like Ms. LaPlante would have the ability to litigate in state court. And we certainly don't argue with that here. We think she does have a remedy to the extent she could prove causation. By the way, there are significant issues there and damages. If she has a remedy, it's in state court. What about the theory that really because it is, in effect, a toxic tort type case and you have tribal lands implicated that it might not be about the land, but it's about the health? Well, Your Honor, as the Supreme Court held in Strait, as this Court in a decision I believe that you were on the panel on held in Red Wolf, that injury to a particular tribal member isn't enough to implicate tribal sovereignty. Now, look, you can assume for purposes of argument that the tribe might have jurisdiction to either regulate or clean up the land in some way. I'm willing to assume that. I'm not going to concede that, but I'm willing to assume that for purposes of argument here. This case won't affect that. This case, Your Honor, is a lot like the case, this Court's case in Box v. Long Warrior, which is at 265 F. 3rd, 771, in particular at page 777. That was an automobile accident on the reservation, I believe, on a state highway running through the reservation. The tribal members there argued, well, there was alcohol involved in this case, and the tribe has a particular interest in regulating alcohol use on the reservation. And this Court said, look, this is a negligence action. This isn't about alcohol. This is simply about personal injuries. And the Court held here the underlying tort action is certainly not needed to preserve tribal sovereignty rights. Even assuming that the tribe possesses some regulatory and adjudicatory power over the sale and consumption of alcohol, the tribe is not prevented in any way from exercising such authority by being denied the right to adjudicate this garden variety automobile accident. In California, drunk driving can sometimes give the result of a punitive damage award. Punitive damage is meant to deter drunk driving. Why can't the tribe apply tribal law to prevent drunk driving on its property? You said drunk driving. You mean to prevent toxic spills on this property? Well, no, I'm taking your drunk driving case. You're taking that case. I'm sorry. Your Honor, I mean, I think that certainly could have been the case in Box v. Long Warrior. But it wasn't so held by this Court. But it wasn't so held by this Court. Your Honor, Judge McKeown, I want to answer your question about Smith that I believe Mr. Marra did not answer. Smith specifically holds at page 1135 that turning to the question of whether the claims bear some connection to Indian land, though that fact may be significant, it is not dispositive. The Court says in Hicks, the Court emphasized that Montana applies to both Indian and non-Indian lands. McDonald v. Means, which Ms. LaPlante relies on here, is based entirely on the opposite assumption. It is based entirely on the assumption that if an accident injures someone on tribal lands, injures an Indian on tribal lands, that that Indian has recourse against a nonmember in tribal courts, solely because the rule of Montana v. United States does not apply. Smith says exactly the opposite. The Supreme Court of the United States in Plains Commerce Bank drives a stake in the heart of McDonald v. Means. There's nothing left of that opinion after this Court's decision in Smith and the Supreme Court's decision in Plains Commerce Bank. And I believe, Your Honor, your decision for the panel and Philip Morris confirms that. Mr. Marra argues that Stockwest and Smith means that a tort doesn't happen until the arrow hits its mark. It's another a bit frustrating point here. Stockwest and Smith, both of the opinions that Mr. Marra cites, were both vacated by en banc panels. He cites a panel decision in Stockwest that was superseded by an en banc decision in Stockwest, which held exactly the opposite. And Smith held exactly the opposite, too. The Court said our inquiry is not limited to deciding precisely when and where a claim arose. That's a concept that's more appropriate in determining statute of limitation or choice of law issues. What the Court held in Smith was that where negligence occurred on tribal land, the fact that the injury occurred on a non-tribal highway is irrelevant. It's with the negligence that the conducted issue arose on tribal land. And that was enough. Here the conducted issue, although there was an effect on tribal land, the conducted issue, which was the maintenance and operation of a gas station and underground storage tank, occurred entirely on non-Indian land. Briefly, the exceptions, Your Honor. The first exception, Ms. LaPlante is asking for a major extension of the rationale of Smith. Smith says that a tribal member may be sued in tribal court by a non-Indian and that the consensual relationship exception may be met when a non-Indian is a plaintiff in tribal court. Here, as the Court knows, we were hailed into tribal court against our will and never consented to the jurisdiction of the tribal court in this case. Tribal jurisdiction is a question of subject matter jurisdiction that Smith makes clear and Hicks makes clear. And this Court's decision in Pease versus Yellowstone County also makes clear can't be waived. So in this case, we certainly did nothing to consent to the jurisdiction of the tribal court. What the plaintiff argues is that there were two cases in the past where we did invoke the jurisdiction of the tribal court. Once was against the tribe as a third party plaintiff. We sued the tribe in a case that the tribal college had brought against us. As you correctly know, Judge McKeown, there was no place else for us to sue. Tribal sovereign immunity would have been an impediment to suing in federal court, so I don't see how we could possibly be held to consent for all future purposes by that lawsuit. The other lawsuit was a suit against our insurers for funding for cleanup of the site. We did sue in tribal court there. I'd respectfully submit that we did so incorrectly. Under the law now, I don't think there would be any chance we could have invoked the jurisdiction in a suit between two non-Indians, even for insurance claims. But having said that, what the Court has said in Plains Commerce and in Atkinson Trading, is that the first consensual relationship exception requires a nexus between the invocation of tribal court jurisdiction and the particular claim. I take it it's your position that even if Town Pump's operation had been on tribal land, there would still be a Montana problem. I think so, Your Honor. I think so. I think it's exacerbated in this case because the conduct arose on non-tribal land. I think that makes it all the more confusing. In fact, in this case as well, that the land where the injury occurred had been changing hands for the last 50 years. I think all of those factors make this even more attenuated from this situation. But even if it had been on tribal land, unless there's a nexus between some business relationship, I don't think you can get there. Go back to that suit, the indemnity suit. Yes, Your Honor. So that is one of the suits they bring up as evidence of, in effect, consent, or maybe it's estoppel. You could use different principles to suggest that in issues arising out of this whole very same problem that you consented. So I understand with respect to the suit against the tribe. But what about the suit against your insurer? Was the college or one of the tribal entities also a defendant in that suit? I don't believe so, Your Honor. I'd have to go back and look. I think the college had its own separate suit. This was a pure indemnity action that eventually got settled. There were competing claims in federal court for jurisdiction and tribal court for jurisdiction. Both courts continued to exercise jurisdiction, and eventually the claim settled. It's a nice little showdown there. But so the tribe wasn't a party. It was purely a dispute between two non-Indians. And presumably it would have been, and was the tribal jurisdiction raised by the insurer? And that's why you had these parallel fights going on? That's right. At the time, town pump did assert jurisdiction in the tribal court. I can't walk away from that. It asserted it over a different party. Over a different claim. A different claim and a different party. That's right. And look, the most important thing you can remember about all of this is that defense trading analysis that says it's not in for a dime, in for a dollar. I believe they use in for a pound, in for a penny, in for a pound. I prefer American currency. But it isn't that. I mean, in Plains Commerce Bank, there was a long-running business relationship between the two parties. There were contracts. There were loans. There were liens on property. And that wasn't enough. I think it was a 20-year relationship. That wasn't enough to give jurisdiction in this separate discrimination claim. And it's the same thing here. We did invoke the jurisdiction in the past, but you can't infer from that one invocation of jurisdiction that there is jurisdiction now. And to be clear, Your Honor, Plains Commerce Bank has a discussion at the very end of the opinion that I think is highly relevant to this point. There, Plains Commerce Bank invoked the jurisdiction of the tribal court to assist it in serving a quick claim notice. I think it was a process server with respect to a separate state court claim that was entirely integrated and entirely related to what eventually became the tribal discrimination claim. And the court said, We can't infer from the fact that you came to tribal court in a related matter to ask a process server to serve notice. We can't infer that from that there's a consensual relationship. That also was the case in Hicks. Footnote 3 of Hicks dealt with the issue of whether a state sheriff who went to tribal court to get a warrant, a tribal warrant, whether there's a consensual relationship there. And the Hicks court said, No, there has to be a private consensual relationship, not the sort of thing you get when you're in court. I'd respectfully suggest that Smith unmoors itself from that and is questionable, especially since Plains Commerce Bank comes back and characterizes Williams v. Lee as a business relationship case. Williams is that early case where there's a footnote in Williams, right? Correct. Williams is a very old case that has been an issue. And we've all been perplexed about what it means. Yeah, that's right. And Smith unmoors the commercial relationship aspect of Williams and just says it's enough if you go into tribal court as a plaintiff, even if there's no commercial relationship. I'd suggest that Plains Commerce Bank, if you read carefully the short discussion of Williams v. Lee, it characterizes Williams v. Lee, again, as a case involving a private consensual commercial relationship. And as a result, it would be, I think, a real stretch to extend Smith where it is now from a case about a tribal plaintiff, a nonmember plaintiff in tribal court, I should say, to something that just says you can, by a course of action in tribal court without consenting, you can be deemed to consent. So I think it would be a real mistake. I think your time has expired. Thank you. I appreciate your time. Your time has expired, but we'll give you some time. I'll give you a minute for rebuttal. Any more than that, thank you very much. With respect to the quote that we heard from counsel with regard to Smith, he just kind of left out the second sentence of the quote when he read it, because in Smith, too, it specifically says, our cases, however, suggest that whether tribal courts may exercise jurisdiction over a nonmember defendant may turn on how the claims are related to tribal lands. Secondly, Smith and Means are both individual tort actions, and this fact was never considered relevant to the determination of tribal court jurisdiction in either case. And keep in mind, cert was denied in the Smith case. And with respect to challenging when the arrow hits its mark, that's a universal premise in tort law. You can't have a tort just because you shoot an arrow off. The point of the analogy is when you shoot an arrow off, if it just lands in the field and doesn't injure anybody, there's no tort. It actually has to contact somebody. The courts never reversed that premise. It's been a longstanding premise in tort law since the dawn of tort law, which is probably 2,000 years ago. Finally, the Plains Commerce and the Atkinson trading cases are not consistent with Smith's consensual relationship test. Please look at that consensual relationship in the minimum contacts analysis that is there. Thank you so much. Thank you. I thank both counsel for your argument. You're obviously both very well versed, and we appreciate that on the Indian jurisdiction issues. The case of Townpump v. LaPlante is submitted, and we're adjourned for the morning. Thank you. Thank you. All rise.
judges: Hawkins, McKeown, Bea